UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISON

CASE NO. 1:23-cv-61233

THE SMILEY COMPANY SPRL,

       Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

       Defendants.

_____/

## COMPLAINT

Plaintiff, The Smiley Company SPRL ("Smiley" or "Plaintiff"), by and through undersigned counsel, hereby sues Defendants, the Individuals, Partnerships, and Unincorporated Associations identified in the caption, which are set forth on Schedule "A" hereto (collectively, the "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.     Defendants are promoting, selling, reproducing, offering for sale, and distributing goods using counterfeits and confusingly similar imitations of Smiley's trademarks and copyrighted works within this district through various Internet based e-commerce stores and fully interactive commercial Internet websites operating under the seller identification names set forth on Schedule "A" hereto (the "Seller IDs").

2.     Like many other famous trademark and copyright owners, Plaintiff suffers ongoing daily and sustained violations of their trademarks rights and copyright at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and

counterfeit Plaintiff's trademarks and copyrights for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff'ss trademarks and copyrights, as well as the destruction of the legitimate market sector in which it operates.

3.     In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, Plaintiff has expended significant amounts of resources in connection with trademark and copyright enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, particularly through online marketplace platforms, has created an environment that requires companies, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the negative effects of confusion and the erosion of the goodwill connected to Plaintiff's brand and copyrighted rights.

## JURISDICTION AND VENUE

4.     This is an action seeking damages and injunctive relief for trademark counterfeiting and infringement and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(d); common law unfair competition and common law trademark infringement; copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

5.     This Court has subject matter jurisdiction pursuant to 17 U.S.C. §§ 101 *et seq.*, 15 U.S.C. §§ 1114 and 1125(a), 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

6.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims, because the claims are so related to the trademark and copyright claims in this action, over

which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Defendants are subject to personal jurisdiction in this District because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this District through at least the Internet based e-commerce stores and fully interactive commercial Internet websites accessible in Florida and operating under the Seller IDs.  Upon information and belief, Defendants infringe Plaintiff's trademarks and copyrights in this District by advertising, using, selling, promoting and distributing counterfeit trademark goods and unauthorized reproductions of Plaintiff's copyrighted works through such Internet based e-commerce stores and fully interactive commercial Internet websites. Also upon information and belief, Defendants are foreign residents purposefully availing themselves of the United States to perpetuate their unlawful activity, and Defendants have not consented to jurisdiction in another state, thus personal jurisdiction is also proper pursuant to Fed. R. Civ. P. 4(k)(2).

8.      Venue is proper pursuant to 28 U.S.C. § 1391(c)(3) because Defendants are not residents of the United States. Venue is also proper in this District pursuant 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens engaged in infringing activities and causing harm within this District by advertising, offering to sell, selling and/or shipping infringing products into this District. Finally, Venue is proper in this Court pursuant to 28 U.S.C. § 1400(a), which states that "civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights… may be instituted in the district in which the defendant or his agent resides or may be found." Defendants may be found in this District, as they are subject to personal jurisdiction herein.

**THE PLAINTIFF**

9.      The Smiley Company SPRL is a foreign limited liability company, with its principal place of business in Brussels, Belgium.

10.     In or about 1971, Franklin Loufrani had foregone college and joined his first newspaper at 19.  While working for the paper France-Soir, Mr. Loufrani became tired of the constant stream of negative news and decided to design a symbol that would highlight positive stories to readers, resulting in the creation of the following iconic yellow circle, two dots, and a smile (the "Smiley Logo") which retained relevancy through 50 years of cultural movements, from free love to raves to the digital revolution.



11.     Throughout the 1970's, the Smiley Logo became a beacon and one of the leading icons of the peace and love culture during this decade of economic, political, and social unrest. Providing a much-needed morale boost during this turbulent time, the Smiley Logo was adopted by political communities and used as a symbol of freedom and hope across art and music festivals around the world.

12.     The Smiley Logo's influence grew alongside emerging musical subcultures, becoming the symbol of the electronic music movement, which continued into the 1990's.  Printed

on everything from stickers, t-shirts, ticket stubs, flyers and shoelaces – this visual shorthand was latched onto by a new hedonistic popular culture.

13.      With the advent of the internet, laptops, and eventually smartphones, the enduring cultural impact of the Smiley Logo was embraced by a new digital generation.  Well ahead of his time, Smiley's co-founder Nicolas Loufrani created a new universal form of digital communication by adding a variety of facial expressions to the original Smiley Logo.  These emoticons inspired a visual-communication revolution and are now sent around the world daily, at an infinite pace.

14.      Continuing to influence modern culture, as one of the world's top global collaboration licensing brands, Smiley has collaborated on high profile activities spanning fashion, art, beauty, homeware, food and beverage.  Famous artworks have included street artist Banksy's Policeman (2003) and Grim Reaper (2005).  Major partnerships include Supreme, Armani, Loewe, Zara, Moschino, Raf Simons, H&M, Eastpak, Dsquared2 and Adidas. In 2022, Smiley celebrated turning 50 with the launch of a global campaign to revive its original mantra: "Take the Time to Smile."  The initiative saw Smiley partner with over 60 brands and retailers from around the globe on exhibitions, custom music tracks, product collections and immersive experiences.  In the same year Smiley announced the launch of Future Positive, an industry first-of-its-kind campaign working with other global brands at tackling worldwide social and climate injustice through product transparency and sustainability.

15.      Genuine Smiley products are marketed and sold at authorized brick and mortar retail locations throughout the United States, including within the State of Florida and this District. Genuine Smiley products are also sold in the United States via the Internet on https://www.smiley.com and various other authorized distributors' websites.  During the time that genuine Smiley products have been sold in interstate commerce, considerable investments have

been made to extensively advertise and promote goods in connection with the Smiley Marks and Copyrighted Works.

16.     The Smiley Marks and Copyrighted Works have never been abandoned and are actively licensed, policed, and enforced.  The Smiley Marks and Copyrighted Works are vital to Smiley's business, as the trademarks and copyrights uphold the image and reputation of the brand and associated products of outstanding quality, design, and performance. Smiley suffers irreparable harm to the goodwill of its brand as well as direct monetary loss any time third parties, including Defendants, sell counterfeit goods using identical or substantially similar trademarks and/or unauthorized copies.

## THE DEFENDANTS

17.     Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities towards consumers throughout the United States, including within this district through the operation of Internet based e-commerce stores via Internet marketplace websites under the Seller IDs.

18.     Defendants are the past and present controlling forces behind the sale of products under counterfeits and infringements of Plaintiff's trademarks and copyrights as described herein using at least the Seller IDs.

19.     Upon information and belief, Defendants directly engage in unfair competition by advertising, offering for sale, and selling goods bearing one or more of Plaintiff's trademarks and copyrights to consumers within the United States and this District through Internet based e-commerce stores using, at least, the Seller IDs and additional seller identification aliases and domain names not yet known to Plaintiff.  Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

20.     Defendants have registered, established, or purchased and maintained their Seller IDs. Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs.

21.     Upon information and belief, some Defendants have registered and/or maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

22.     Upon information and belief, Defendants will continue to register or acquire new seller identification aliases and domain names for the purpose of selling and offering for sale goods infringing Plaintiff's products, bearing counterfeit and confusingly similar imitations of one or more of Plaintiff's trademarks, and unauthorized reproductions or derivative works unless preliminarily and permanently enjoined.

23.     Defendants use their Internet-based businesses in order to infringe the intellectual property rights of Plaintiff.

24.     Defendants' business names, *i.e.*, the Seller IDs, associated payment accounts, and any other alias seller identification names used in connection with the sale of counterfeit and infringing goods bearing one or more of Plaintiff's trademarks and copyrights are essential components of Defendants' online activities and are one of the means by which Defendants further

their counterfeiting and infringement scheme and cause harm to Plaintiff. Moreover, Defendants are using Plaintiff's famous trademarks, and copyrights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

## GENERAL FACTUAL ALLEGATIONS

### *Smiley's Intellectual Property Rights*

25.     Plaintiff is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "Smiley Marks"):

| Trademark | Registration Number | Registration Date | Classes / Goods |
|---|---|---|---|
| SMILEY | 2,747,618 | 08/05/2003 | IC 003. US 001 004 006 050 051 052. G & S: non-medicated cosmetic preparations for slimming purposes, namely, skin creams, skin lotions, [skin pomades, rust removing preparations,] sun-tanning preparations for cosmetic purposes, [fabric softeners for laundry use, shaving soap, cotton sticks for cosmetic purposes, skin whitening creams, laundry bleach, scented wood, floor polish, hair color, hair dyes, hair waxing lotions, artificial eyelashes, shoe care products, namely, shoe wax, shoe polish, and shoe cream, depilatory wax, parquet floor wax, polishing wax for use on furniture and automobiles, leather preservatives, namely, polishing creams and waxes, cosmetic kits comprised of eyelash pencils, eyelid pencils, namely], shampoos, [drain openers, general purpose scouring powders, decolorants for cosmetic purposes, |

| | | | |
|---|---|---|---|
| | | | namely, hair decolorants, degreasing preparations not used in the manufacturing process for use on floors, make-up removing preparations, depilatory creams, stains removers, paint removers, rust and mineral removing cleaning preparations, laundry detergents,] toilet water, [anti-static dryers sheets, emery paper, emery cloth, emery boards, polish for furniture and flooring, incense, windscreen cleaning preparations,] essentials oils for personal use[, hair lacquer, hair bleaching preparations, sachets for perfuming linen, hair lotions, false nails, cotton balls for cosmetic purposes, abrasive paper for use on the nails, wallpaper cleaning preparations, paint stripper, pumice stones for personal use, adhesives for cosmetic use, namely, adhesives for use in connection with artificial hair, shaving preparations, varnish-removing preparations]. FIRST USE: 20010226. FIRST USE IN COMMERCE: 20010226 |
| SMILEY | 2,566,529 | 05/07/2002 | IC 028. US 022 023 038 050. G & S: Toys, namely plush stuffed toys and plastic balls, latex balls and squeezable balls [ ; sporting goods, namely knee pad ]. FIRST USE: 19880516. FIRST USE IN COMMERCE: 19880516s |
| SMILEY | 5,453,732 | | IC 003. US 001 004 006 050 051 052. G & S: Bubble bath, Deodorants for personal use, lotions, false nails. FIRST USE: 20150401. FIRST USE IN COMMERCE: 20180125<br>IC 004. US 001 006 015. G & S: candles. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |

|  |  |  | IC 005. US 006 018 044 046 051 052. G & S: Food for babies, adhesive bandages, air deodorant, feminine hygiene pads, additive for nutritional purposes, sanitary napkins, car deodorants, vitamin supplements; babies' disposable diapers. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |
|---|---|---|---|
|  |  |  | IC 006. US 002 012 013 014 023 025 050. G & S: metal keys for locks. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |
|  |  |  | IC 008. US 023 028 044. G & S: Spoons, hand tools, beard clippers, scissors, nail clippers, hair removing tweezers, ice picks, nail files, manicure sets, hammers, pedicure sets, pliers, electric and non-electric razors, screwdrivers and drills; electric and non-electric flat irons. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 |
|  |  |  | IC 009. US 021 023 026 036 038. G & S: Weighing apparatus, scales, calculating machines, sound amplifiers, anti-glare glasses, computer terminals, electric, neon or luminous signs, photographic cameras, magnetic encoded cards, cartridges for video games, life jackets, computer keyboards, electrical connectors, contact lenses, electrical sockets, eyeglass cases, blank magnetic data carriers, fire extinguishers, loudspeakers, telephone apparatus, sunglasses, computer memories, computer peripheral mouse pads, computer mouse, television sets, video cameras, and video game cartridges. FIRST USE: 20121201. FIRST USE IN COMMERCE: 20180125 |

| | | | IC 014. US 002 027 028 050. G & S: Precious metals and their alloys sold in bulk, clocks, works of art of precious metal, jewelry, jewelry boxes, earrings, watches, bracelets, cuff links, brooches, necklaces. FIRST USE: 20150601. FIRST USE IN COMMERCE: 20180125<br><br>IC 016. US 002 005 022 023 029 037 038 050. G & S: Adhesive tapes for stationery or household purposes, posters, photo albums, scrapbooks, lithographic prints, stickers, loose-leaf binders, boxes of cardboard or paper, rubber stamps, calendars, printing sewing patterns, note books, business cards, postcards, tags for index cards, iron-on transfers and plastic transfers, decalcomanias, graphic art reproductions, stationery folders, writing materials, namely, note books, post cards, ball-point pens, anniversary books, appointment books, autograph books, baby books, sketch books, sketch pads, bookmarks, daily planners, date books, address books, diaries, engagement books, envelopes, electric and non- electric erasers, fountain pens, pen or pencil holders, pen or pencil trays, pencils, artists' pencils, drawing pencils, pencil boxes, pencil cases, pen cases, stationery, and envelopes, rubber erasers, wrapping paper, pencils, stationery envelopes, blank or partially printed paper labels, announcement cards, writing paper, school supplies, namely, notebooks, pencil cases, toilet paper, pictures, printed matter, namely, magazines in the field of art, lithographs, table linen of paper, handkerchiefs of paper, stationery, paper stationery, paper banners, paper bags, unmounted photographs, art prints, pen and pencil trays, printed |
|---|---|---|---|

|  |  |  | publications, namely, magazines, newspapers, graphic art reproductions, plastic or paper envelopes, bags and pouches for merchandise packaging, writing pads, fountain pens, and paper or plastic transparencies, paper towels, embroidery design patterns, table mats of paper, pencil sharpeners. FIRST USE: 20130901. FIRST USE IN COMMERCE: 20180125

IC 021. US 002 013 023 029 030 033 040 050. G & S: Combs, toilet brushes, water troughs, thermal insulated containers for food, terra-cotta or glass, figurines, table plates not of precious metal, brooms, cocktail picks, drinking flasks for travelers, drinking vessels, beer mugs, soap boxes, dispensing paper towels for household use, non-electric kettles, bottles sold empty, bottle openers, pitchers not of precious metal, non-electric toothbrushes, perfume burners, coffee services, not of precious metal, egg cups not of precious metal, beverage glassware, jugs, cookery molds, cooking utensils, toothpicks, cutting boards for the kitchen, trivets, toilet paper holders, soap dispensers, sponges for household purposes, scouring sponges for toilets, earthenware basins in the nature of bowls, household utensils, flower pots; gloves for household purposes, gloves for gardening, ice buckets, non-electric portable coolers for food and beverages, goblets, not of precious metal, mugs, not of precious metal, bottle- gourds, not of precious metal, crumb trays, dishes, soap holders, sponge holders, ironing boards, pepper shakers, garbage cans, trash cans, napkin rings, thermal insulated bags for food or beverages, statutes, statuettes, table plates, napkin |
|---|---|---|---|

| | | | holders, non-metal piggy banks, earthenware mugs, drinking glasses, tableware services not of precious metal. FIRST USE: 20130901. FIRST USE IN COMMERCE: 20180125 <br><br> IC 025. US 022 039. G & S: Clothing, namely, suits, dresses, t-shirts, sweatshirts, raincoats, shorts, stockings, cloth bibs, berets, hosiery, boots, suspenders, pants, baseball caps, golf caps, athletic shoes, masquerade costumes, hats, babies pants, neckties, sashes for wear, scarves, gloves, layettes, slippers, ear muffs, aprons, sportswear, namely, jogging suits, and training suits. FIRST USE: 20121201. FIRST USE IN COMMERCE: 20180125 <br><br> IC 026. US 037 039 040 042 050. G & S: Hair accessories, electric hair curlers. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125 <br><br> IC 027. US 019 020 037 042 050. G & S: carpets. FIRST USE: 20141201. FIRST USE IN COMMERCE: 20180125 <br><br> IC 028. US 022 023 038 050. G & S: Games, playthings, namely, toys in the nature of flying disks, sporting articles, golf balls, handballs, playground balls, soccer balls, baseballs, basketballs, bowling balls, footballs, tennis balls, rubber balls, sports balls, table tennis balls, volley balls, beach balls balloons, toys, namely, jigsaw puzzles; Christmas tree ornaments, party favors in the nature of small toys; namely, confetti. FIRST USE: 20121201. FIRST USE IN COMMERCE: 20180125 |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | IC 029. US 046. G & S: Meat. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125<br><br>IC 030. US 046. G & S: Sugar, pasta, corn flakes, chewing gum. FIRST USE: 20170301. FIRST USE IN COMMERCE: 20180125<br><br>IC 032. US 045 046 048. G & S: Mineral and aerated waters, fruit juices. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125<br><br>IC 034. US 002 008 009 017. G & S: Cigarette cases, cigarette lighters, ashtrays not of precious metal, cigarette holders, not of precious metal, ashtrays of precious metal for smokers. FIRST USE: 20141201. FIRST USE IN COMMERCE: 20180125<br><br>IC 035. US 100 101 102. G & S: Advertising and marketing. FIRST USE: 20150601. FIRST USE IN COMMERCE: 20180125<br><br>IC 036. US 100 101 102. G & S: Credit card services, monetary exchange. FIRST USE: 19720717. FIRST USE IN COMMERCE: 20180125<br><br>IC 038. US 100 101 104. G & S: Telecommunication services, namely, personal communication. FIRST USE: 20170701. FIRST USE IN COMMERCE: 20180125 |
| SMILEY | 2,970,055 | 07/19/2005 | IC 003. US 001 004 006 050 051 052. G & S: Soaps, bath gels, makeup, perfumes, body lotions, nail care preparations, cosmetic preparations for skin renewal, hair shampoos, hair |

| | | | |
|---|---|---|---|
| | | | gel. FIRST USE: 20010226. FIRST USE IN COMMERCE: 20010226 |
| SMILEY | 3,016,430 | 11/15/2005 | IC 009. US 021 023 026 036 038. G & S: Downloadable computer software program for use in attaching, icons or other symbols, in e-mail correspondence and instant messaging. FIRST USE: 20001200. FIRST USE IN COMMERCE: 20001200 |
| SMILEY | 2,801,529 | 12/30/2003 | IC 025. US 022 039. G & S: Clothing, namely, pullovers, [trousers] and shirts. FIRST USE: 19700000. FIRST USE IN COMMERCE: 19700000 |
|  | 5,348,135 | 12/05/2017 | IC 016. US 002 005 022 023 029 037 038 050. G & S: Printed matter, namely, children's books, stationery, greeting cards, note cards, post cards, posters, newspapers, printed calendars, printed forms, printed invitations, photo albums, scrapbooks, photographs; bookbinding materials, namely, bookbinding papers or cloth, bookbinding adhesive tape or glue; adhesive tapes for stationery or household purposes; artists' materials, namely, artists' paintbrushes, typeset printing blocks, printing type, art pads, art paper, paper, cardboard, dressmaking patterns, drawings, watercolors, paintings both framed and unframed; lithographic or engraved art objects; writing implements, namely, pens, pencils, fountain pens, artists' pencils; drawing instruments, namely, charcoal pencils, drawing pencils, pencil cases; typewriters and office requisites except furniture, namely, magnetic boards, file folders, desktop stationery cabinets; Printed instructional, educational, and teaching materials in the field of primary education; |

| | | | cardboard or paper boxes; paper products, namely, paper handkerchiefs, paper towels, paper table linen, toilet paper, babies' disposable napkins of paper and cellulose; bags, namely, paper or plastic for use as gift bags, paper bags or pouches, paper and plastic bags for merchandise packaging purposes, paper and plastic garbage bags; pamphlets in the field of fashion, home, decorating and licensing; prospectuses in the field of fashion, home, decorating and licensing<br><br>IC 018. US 001 002 003 022 041. G & S: Leather and imitation leather, animal skins and hides; trunks and suitcases; umbrellas, parasols and walking sticks; whips, harness and saddlery; wallets, purses not of precious metal; handbags, backpacks, wheeled bags; sports bags for climbers; sports bags for campers; traveling bags, beach bags, school bags, unfitted vanity cases; collars and clothing for animals, namely, pet clothing and collars; mesh shopping bags, mesh shopping nets for use in an automobile; leather bags or pouches |
| SMILEY | 6,428,755 | 05/14/2019 | IC 027. US 019 020 037 042 050. G & S: Bath mats; Rugs; Floor mats for vehicles. FIRST USE: 20110228. FIRST USE IN COMMERCE: 20190331 |

26.     The foregoing registrations for the Smiley Marks constitute presumptive evidence of their ownership and validity. The Smiley Marks are used in connection with the design, marketing, and distribution of high-quality goods in at least the categories identified above.

27.     Long before Defendants began their infringing activities complained of herein, the Smiley Marks have been used by Plaintiff in interstate commerce to identify and distinguish Plaintiff's series and associated merchandise for an extended period.

28.     The Smiley Marks are well-known and famous and have been for many years. Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Smiley Marks and products bearing the Smiley Marks. The Smiley Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

29.     Plaintiff has extensively used, advertised, and promoted the Smiley Marks in the United States in association with its animated series and associated merchandise.

30.     As a result of Plaintiff's efforts, members of the consuming public readily identify products and merchandise bearing or sold under the Smiley Marks as being high quality goods sponsored and approved by Plaintiff.

31.     The Smiley Marks serve as symbols of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

32.     Plaintiff is also the owner of the following copyrights registered in the United States of America (collectively the "Copyrighted Works"):

| Registration Number | Registration Date | Title of Work |
|---|---|---|
| VAu000446942 | 1999 | Andazia International--Millennium 2000 T-shirts : no. 280-283, 287-289. |
| VAu000446948 | 1999 | Berkshire--Smiley babies outerwear, socks, Smiley rainwear, umbrellas, Smilette : no. BERK001-BER019. |
| VAu000446941 | 1999 | Commonwealth toy--Smiley Babies packaging labels : no. CTN01-CTN05. |
| VAu000304029 | 1998 | Freeze/Millennium 2000 T-shirts : no. FR001-FR118. |
| VAu000446947 | 1999 | Freeze--Millennium 2000 T-shirts : no. FR119-FR168. |

| VAu000446946 | 1999 | Home Group, Inc.--Smiley headwear : no. HG001-HG004. |
| VAu000456386 | 1999 | Jacques Moret Intimates/SHB intimates ... : no. JM045-JM068. |
| VAu000446943 | 1999 | Maru artwork--Smiley characters, millennium 2000 : no. MARU01-MARU06. |
| VAu000446940 | 1999 | Millennium 2000 socks : no. 6209-6248, 6250-6256. |
| VAu000456387 | 1999 | NTD Apparel, Inc. : no. NTD181-NTD280. |
| VAu000446944 | 1999 | Pro Specialties Group--Millennium 2000 : no. PS005-PS006. |
| VAu000446945 | 1999 | Ralph Marlin--Millennium 2000 boxers : no. RM001-RM005. |
| VAu000440872 | 1998 | "Smiley for kids" December 98. |
| PAu002457240 | 1999 | Smiley forever. |
| PAu002457241 | 1999 | Smiley trend book--fall/winter 2000-01. |

33.     Upon information and belief, Plaintiff's registration of the works identified herein pre-dates Defendants' infringement thereof.

34.     Plaintiff has all exclusive rights in and to the Copyrighted Works and control all licenses to distribute, perform, and enforce its rights to the Copyrighted Works.

35.     Plaintiff has expended substantial time, money, and other resources developing, advertising, and developing, promoting, and distributing the Copyrighted Works.

***Defendants' Counterfeiting and Infringing Conduct***

36.     Upon information and belief, Defendants are promoting and advertising, distributing, selling, and/or offering for sale counterfeit and infringing goods in interstate commerce using exact copies and confusingly similar copies of the Smiley Marks and Copyrighted Works through at least the Internet based e-commerce stores operating under the Seller IDs (collectively, the "Counterfeit Goods"). Plaintiff have used the Smiley Marks and Copyrighted Works extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

37.     Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially and materially different than that of Plaintiff's genuine goods.  Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Plaintiff under the Smiley Marks and Copyrighted Works despite Defendants' knowledge that they are without authority to use the Smiley Marks and Copyrighted Works.  The effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Plaintiff.

38.     Defendants advertise their Counterfeit Goods for sale to the consuming public via e-commerce stores on Internet marketplace websites using at least the Seller IDs.  In so advertising these goods, Defendants improperly and unlawfully use one or more of the Smiley Marks and Copyrighted Works without Plaintiff's permission.

39.     As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the Smiley Marks and Copyrighted Works. Specifically, Defendants are using counterfeits and infringements of Plaintiff's famous Smiley Marks and Copyrighted Works in order to make their e-commerce stores and websites selling illegal goods appear more relevant, authentic, and attractive to consumers searching for Plaintiff's related goods and information online.  By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods. Thus, upon

information, these Defendants are the same person, related persons, or acting in concert with one another such as utilizing the same fraudulent marketing material and/or obtaining the counterfeit product from a common source. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the goodwill associated with the Smiley Marks and Copyrighted Works, and/or (iii) increasing Plaintiff's overall cost to market the Smiley Marks and Copyrighted Works, and educate consumers about their brand via the Internet.

40.    Upon information and belief, Defendants are concurrently targeting their counterfeiting and infringing activities toward consumers and causing harm within this District and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

41.    Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Smiley Marks and Copyrighted Works, including their exclusive right to use and license such intellectual property and the goodwill associated therewith.

42.    Defendants' use of the Smiley Marks and Copyrighted Works, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

43.    Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation. If Defendants'

intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

44.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

45.     Upon information and belief, Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' counterfeiting and infringing and unfairly competitive activities connected to their Seller IDs and any other alias seller identification names being used and/or controlled by them.

46.     Further, upon information and belief, Defendants are likely to transfer or conceal their assets to avoid payment of any monetary judgment awarded to Plaintiff.

47.     Plaintiff has no adequate remedy at law.

48.     Plaintiff is suffering irreparable injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the Smiley Marks and Copyrighted Works.

49.     The harm and damages sustained by Plaintiff has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

**COUNT I -- TRADEMARK COUNTERFEITING AND INFRINGEMENT
PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)**

50.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

51.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Smiley Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

52.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods, using counterfeits and/or infringements of one or more of the Smiley Marks. Defendants are continuously infringing and inducing others to infringe the Smiley Marks by using one or more of them to advertise, promote, offer to sell, and/or sell at least counterfeit and infringing goods.

53.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

54.     Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable damage to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

55.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the Smiley Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

56.     Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II -- FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(A) OF THE LANHAM ACT (15 U.S.C. § 1125(A))

57.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

58.     Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of one or more of the Smiley Marks have been widely advertised and offered for sale throughout the United States via the Internet.

59.     Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of one or more of the Smiley Marks are virtually identical in appearance to Plaintiff's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

60.     Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

61.     Defendants have authorized infringing uses of one or more of the Smiley Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

62.     Additionally, Defendants are using counterfeits and infringements of the Smiley Marks in order to unfairly compete with Plaintiff and others for space within search engine organic

results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reduce the visibility of Plaintiff's genuine goods on the World Wide Web.

63. Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

64. Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to their goodwill and business reputation, as well as monetary damages.

## COUNT III -- COMMON LAW UNFAIR COMPETITION

65. Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

66. This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods using marks which are virtually identical, both visually and phonetically, to one or more of the Smiley Marks in violation of Florida's common law of unfair competition.

67. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing counterfeits and infringements of the Smiley Marks. Defendants are also using counterfeits and infringements of the Smiley Marks to unfairly compete with Plaintiff for (i) space in search engine results across an array of search terms and/or (ii) visibility on the World Wide Web.

68.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the Smiley Marks.

69.     Plaintiff has no adequate remedy at law and are suffering irreparable injury and damages as a result of Defendants' actions.

### COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

70.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

71.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing one or more of the Smiley Marks.  Plaintiff is the owner of all common law rights in and to the Smiley Marks.

72.     Specifically, Defendants, upon information and belief, are promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the Smiley Marks.

73.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the Smiley Marks.

74.     Plaintiff has no adequate remedy at law and are suffering damages and irreparable injury as a result of Defendants' actions.

### COUNT V -- INFRINGEMENT OF COPYRIGHT

75.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

76.     Defendants have copied, performed, and distributed the Smiley Copyrighted Work through their advertising, distributing, offering for sale, and selling of unauthorized reproductions and derivatives as part of a large scale and ongoing daily illegal enterprise.  This illegal enterprise, without injunctive relief, will continue through the Defendants' Seller ID's as well as through other seller identifications owned now or in the future by the Defendants.

77.     Defendants are directly liable for infringing Plaintiff's Copyrighted Work under the Copyright Act, 17 U.S.C. §§ 106(1), (2), (3), (5) & 501.

78.     Without authorization from any Plaintiff, or right under law, Defendants have directly infringed Plaintiff's Copyrighted Work by their copying, display, and distribution of the work used by Defendants to cause and effect the copying, display, and/or distribution of those works through their advertising, distributing, offering for sale, and selling of Counterfeit Goods.

79.     Defendants have actual and constructive knowledge, or should have knowledge, of their infringement of Plaintiff's Copyrighted Work.

80.     The foregoing acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to Plaintiff's rights in the Copyrighted Work.

81.     As a direct and proximate result of Defendants' infringement of Plaintiff's exclusive rights, Plaintiff is entitled to actual damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b).

82.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable damages to Plaintiff and are unjustly enriching Defendants at Plaintiff's expense.

83.     In addition, Plaintiff is entitled to injunctive relief, as set forth below, because of the continuing infringement of many of Plaintiff's Copyrighted Works and because of the significant threat of future infringement as evidenced herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

A.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Smiley Marks; from using the Smiley Marks or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, or copy of the Smiley Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of

Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using unauthorized copies of Smiley Marks; and from otherwise unfairly competing with Plaintiff.

B.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court disable and/or cease facilitating access to the Seller IDs, associated ecommerce stores and websites, and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements the Smiley Marks.

C.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective Seller ID.

D.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court permanently remove any and all listings and associated images of goods bearing counterfeits and/or infringements of the Smiley Marks via the e-commerce stores operating under the Seller IDs, and upon Plaintiff's request, any other listings and images of goods bearing counterfeits and/or infringements of the Smiley Marks associated with and/or linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to

28

promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the Smiley Marks.

E.      Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. § 1117 and 35 U.S.C § 289.

F.       Entry of an order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other alias seller identification or e-commerce store names, domain names and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

G.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) and 35 U.S.C. § 285 of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

H.      Entry of an Order requiring Defendants to pay Plaintiff for all profits and damages resulting from Defendants' copyright infringement activities, together with appropriate interest thereon; that Defendants be required to account to Plaintiff for, and disgorge to Plaintiff, and to pay to Plaintiff, all the gains, profits, savings and advantages realized by Defendants from their acts of copyright infringement described above.

I.      Entry of an order requiring Defendants to pay prejudgment interest according to law.

J.      Entry of an order for such other and further relief as the Court may deem proper and just.

Date:   June 27, 2023                          Respectfully submitted by,

                                               **Javier Sobrado**
                                               Javier Sobrado (Fla. Bar No. 44992)
                                               Attorney Email address: jsobrado@brickellip.com
                                               THE BRICKELL IP GROUP, PLLC
                                               1101 Brickell Avenue, South Tower, Suite 800
                                               Miami FL, 33131
                                               Telephone: (305) 728-8831
                                               *Attorneys for Plaintiff*