UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case Number: 23-61233-CIV-MARTINEZ-BECERRA

THE SMILEY COMPANY SPRL,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

**SEALED ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND ORDER RESTRAINING TRANSFER OF ASSETS**

**THIS CAUSE** came before this Court on Plaintiff the Smiley Company SPRL's ("Smiley" or Plaintiff) *ex parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets the ("Motion"), (ECF No. 5).[1] This Court has reviewed the Motion, pertinent portions of the record, and applicable law and is otherwise fully advised in the premises.

**I.   BACKGROUND**

Plaintiff moves *ex parte* for entry of a temporary restraining order against Defendants, the Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" to the Complaint (collectively "Defendants"), and an order restraining the financial accounts used by

---

[1] This Court will address Plaintiff's request for a preliminary injunction in a separate order filed simultaneously hereto. This Order deals solely with Plaintiff's request for the entry of a temporary restraining order and order restraining transfer of assets.

Defendants pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and the All Writs Act, 28 U.S.C. § 1651(a). Plaintiff is the owner of the federally registered trademarks identified in Schedule B (the "Smiley Marks") and the federally registered copyrights identified in Schedule C attached to the Declaration of Nicolas Loufrani. (Loufrani Decl. Sch. B., ECF No. 5-3; Sch. C., ECF No. 5-4.) The Smiley Marks are used in connection with the design, marketing, and distribution of various products in the categories identified in Schedule B. (*See* Loufrani Decl. ¶ 11.)

Defendants, through the various Internet based e-commerce stores operating under the seller identities identified on Schedule "A" to the Complaint (the "Seller IDs"), (Schedule A, ECF No. 9), have advertised, promoted, offered for sale, or sold goods using the Smiley Marks and/or Copyrighted Works without authorization. (*See* Loufrani Decl. ¶ 15; Weaver Decl. ¶ 4, ECF No. 5-5.)

Although each of the Defendants may not copy and infringe each of the Smiley Marks for each category of goods protected, Plaintiff has submitted evidence showing the Defendants have infringed at least one of the Smiley Marks. (*See* Weaver Decl. ¶ 4.) The Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Smiley Marks. (*See* Loufrani Decl. at ¶ 15; Weaver Decl. at ¶ 4.)

Plaintiff retained a third party to investigate the promotion and sale of counterfeit and infringing versions of Plaintiff's branded and protected products by Defendants. (*See* Loufrani Decl. ¶¶ 16-17; Weaver Decl. at ¶ 5.) Plaintiff's investigator accessed each of the e-commerce stores operating under Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs, bearing counterfeits of The Smiley Marks at issue in this

action, and requested each product to be shipped to an address in the Southern District of Florida. (*See id.*) Plaintiff conducted a review and visually inspected the Smiley branded items for which orders were initiated by Plaintiff's third-party investigator via the Seller IDs and determined the products were nongenuine, unauthorized versions of Plaintiff's products. (Loufrani Decl. ¶¶ 17-18.)

## II. LEGAL STANDARD

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto. Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

## III. DISCUSSION

The declarations Plaintiff submitted in support of the Motion support the following conclusions of law:

A.     Plaintiff has a strong probability of proving at trial that (1) consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Smiley Marks, and that (2) the products Defendants are selling and promoting for sale are copies of Plaintiff's products which bear copies of the Smiley Marks.

B.     Because of the infringement of the Smiley Marks, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in Plaintiff's Complaint, Application for Temporary Restraining Order, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted:

1.     Defendants own or control Internet based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of Plaintiff's rights;

2.     There is good cause to believe that more counterfeit and infringing products bearing Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates; and

3.     There is good cause to believe that if Plaintiff were to proceed to give notice to Defendants of this Application for Temporary Restraining Order, Defendants can easily and quickly change the ownership or modify domain registration and e-commerce store account data and content, change payment accounts, redirect consumer traffic to other

seller identification names, and transfer assets and ownership of Seller IDs thereby thwarting Plaintiff's ability to obtain meaningful relief.

C.     The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products if such relief is not issued.

D.     The public interest favors issuance of the temporary restraining order to protect Plaintiff's trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

E.     Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of the Smiley Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'" (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962))).

F.     Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss*, 51 F.3d at 987 (citing *F.T.C. v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G.     In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to

believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, (ECF No. 5), is **GRANTED** as follows:

1. Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are temporarily restrained as follows:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Smiley Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff;

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using the Smiley Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Smiley Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants; and

    c.    From using any reproduction, counterfeit, copy, or colorable imitation of the Smiley Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants.

2. Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the use of the Smiley Marks, or confusingly similar trademarks, or unauthorized copies of the Copyrighted Works on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

3. Each of the Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

4. Upon receipt of notice of this Order, Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, including but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, and/or Taobao, and their related companies and affiliates (collectively, the "Third-Party Providers"), **SHALL, within five business days after receipt of notice of this Order,**

    a.    restrain the transfer of all funds, including funds relating to ongoing account activity, held, or received for Defendants' benefit or to be transferred into Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related

      financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third-Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

   b. provide Plaintiff expedited discovery of the following: (i) the identity of all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores operating under the Seller IDs identified on Schedule "A" to the Complaint, as well as any other accounts of the same customer(s); (ii) the identity and location of the Defendants identified in Schedule "A," including all known contact information including any and all known aliases and associated e-mail addresses; (iii) an accounting of the total funds restrained and identities of the financial account(s) and sub-account(s) for which the restrained funds are related. ; (iv) an identification of all products sold by Defendants using the Smiley Marks and/or Copyrighted Works; and (v) an identification of all sales of such products and the revenues derived therefrom.

5.    Any Defendant or Third-Party Provider subject to this Order may petition this Court to modify the asset restraint set out in this Order.

6.    The Clerk of the Court is **DIRECTED** to issue a single original summons in the name of "The Individuals, Partnerships and Unincorporated Associations Identified in Schedule 'A' of the Complaint" that shall apply to all Defendants.

7.  The combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

8.  This Order shall apply to the Seller IDs, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the Smiley Marks and Copyrighted Works at issue in this action and/or unfairly competing with Plaintiff.

9.  This Order shall remain in effect until such time that Plaintiff's Motion for Entry of Preliminary Injunction can be heard, **not to exceed twenty-eight days after entry of this Order**, or until such further dates as set by the Court or stipulated to by the parties. Though Federal Rule of Civil Procedure 65(b), requires that entry of a TRO may not exceed fourteen days, this Court finds good cause exists to extend the Order given the nature of the Defendants' unknown whereabouts and illicit Internet activity described herein.

10. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which the Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of this Court. In this Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

11. After the Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, the Plaintiff shall serve copies

of the Complaint, Application for Temporary Restraining Order, and this Order, on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective Seller IDs or by providing a copy of this Order by email to the marketplace platforms for each of the Seller IDs so that the registrar, or marketplace platform, in turn, notifies each of the Defendants of the Order, or by other means reasonably calculated to give notice which is permitted by the Court. In addition, the Plaintiff shall post copies of the Complaint, Application for Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the website, and shall provide the address to the website to the Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof. The Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to the Defendants by regularly updating the website located at https://www.dropbox.com/scl/fo/kyoawq4v7n4w3qapw5s4k/h?rlkey=jn9hxyn95wltwy6y04p7fm uxn&dl=0, or by other means reasonably calculated to give notice which is permitted by the Court.

12. The Clerk is **DIRECTED** file this Order under **SEAL** until further order of this Court.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27 day of July, 2023.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Becerra
All Counsel of Record